IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| MV TRANSPORTATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> AMALGAMATED TRANSIT UNION, <br> LOCAL 1764 AND JOHN DOES 1-99, *et al.* <br> Defendants. | Action No. 08:11–CV–1471—AW |

## MEMORANDUM OPINION

Pending before the Court is Plaintiff MV Transportation Inc.'s Motion for Temporary Restraining Order (Doc. No. 2). A hearing was held in this matter on June 10, 2011. For the reasons stated on the record and herein, the Court will **GRANT** Plaintiff's Motion for a Temporary Restraining Order (Doc. No. 2).

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff MV Transportation, Inc. ("MV") is a company that provides services to public and private entities. Among the services that MV provides is passenger transportation to developmentally and mentally disabled adults in Capitol Heights and Beltsville, Maryland. Plaintiff alleges that MV's drivers are members of Defendant Amalgamated Transit Union, Local 1764. Defendant allegedly began a work stoppage on May 31, 2011 by refusing to appropriately utilize MV's two-way Nextel radios while performing their duties. According to Plaintiff, the collective bargaining agreement ("Labor Agreement") which governs the relationship between MV and Local 1764 contains both no-strike and compulsory arbitration provisions. The dispute which gives rise to the instant motion is an arbitrable grievance, Plaintiff asserts. Defendant does not contest the fact that this dispute is arbitrable.

Plaintiff has a Service Contract with WMATA, whereby MV agrees to provide drivers and dispatch service in Capitol Heights and Beltsville. As the vehicles that MV uses do not possess integrated two-way radios, pursuant to the Service Contract, MV is required to have a two-way radio or cellular phone in each vehicle, which is tuned to the base station during dispatch. The radios are used to "provide central dispatch with information regarding pull-out and pull-in times, vehicle and driver assignments, and operational difficulties and accidents." (Doc. No. 2-1, at 2). Relevant to the motion at bar, in 2009, the District of Columbia passed a law which restricted the use of cellular phones and similar devices while driving a vehicle. Subsequently, WMATA updated its Electronic Device Policy, requiring all electronic device policies to be consistent with WMATA's. Plaintiffs assert that MV adopted WMATA's Electronic Device Policy and made it applicable to its drivers. Afterwards, MW was purportedly faced with protests from Local 1764 because MV unilaterally adopted the WMATA electronic device policy.

Plaintiffs assert that Local 1764 circulated a flyer to its members on May 26, 2011, which stated that on May 31, 2011, and "until further notice is given, Local Union 1764 members are not to take or use the Nextel [two-way radios] during the performance of their duties." (Doc. No. 2-1, at 3). According to Plaintiffs, the reason offered by the Local 1764 for issuing this dictate was that "[m]embers of Local Union 1764 [were] being terminated for using the Company issued Nextels . . .[and] there is nothing in the Collective Bargaining Agreement that requires our members to take or use these devices." Plaintiff aver that at the beginning of work on May 31, 2011, Local 1764 instructed drivers to take their Nextel devices in the vehicles they were driving but to turn off the devices between stops. According to Plaintiff, Defendant's refusal to properly utilize the Nextel devices is a violation of the no-strike provisions of the Labor Agreement between MV and Local 1764, which states that neither the Union nor its members,

. . will directly or indirectly, cause, sanction or participate in any strike, work, stoppage, slowdown, or boycott against the Company.  Instigation, promotion, sponsorship, engagement, or even encouragement of a strike or slowdown, refusal to cross a picket line, work stoppage, ***refusal to perform assigned work or any other intentional interruption of service or production, regardless of the reason for doing so is in direct violation of this Agreement.***[1]

**(Doc. No. 2-1, at 4) (emphasis in original).**

Plaintiffs allege that if Defendants are not enjoined from their practice of turning off their Nextel devices while driving, this will cause MV "substantial irreparable injury and damage including but not limited to, the loss of client's goodwill and other consequential financial loss." The parties appear to dispute whether irreparable harm will result from the Defendant's act of failing to turn on their Nextel devices during transit.   In the hearing on this matter, Defendants asserted that listening to calls coming in on their Nextel devices while driving causes significant distractions for the drivers, as they are often required to pull over when driving in order to respond to calls from their supervisors.  Resultantly, Defendants claim that this practice of having to pull over to find a safe location to respond to calls has caused drivers to be late to their destinations, in addition to posing a safety hazard for drivers.

**II.     DISCUSSION**

As Plaintiff point out, in *Boys Market, Inc. v. Retail Clerks Local 770*, 398 U.S. 235, 254 (1970), the Supreme Court mentioned four factors that courts must consider when determining whether to grant a preliminary injunction in a labor dispute, stating

> When a strike is sought to be enjoined because it is over a grievance which both parties are contractually bound to arbitrate, the District Court may issue no injunctive order until it first holds that the contract does have that effect; and the employer should be ordered to arbitrate, as a condition of his obtaining an injunction against the strike. Beyond this, the District Court must, of course, consider whether issuance of an injunction would be warranted under ordinary principles of equity-whether breaches are occurring and will continue, or have been threatened and will be committed; whether they have caused or will cause irreparable injury

---

[1] Plaintiffs aver that the Defendants have breached the no-strike provision of the collective bargaining agreement by failing to "carry and properly utilize the Nextel devices in the performance of their job duties for public safety, driver safety, rider safety, efficient operations and compliance with MV's Service Contract with WMATA." (Doc. No. 2-1, at 7).

to the employer; and whether the employer will suffer more from the denial of an injunction than will the union from its issuance.

Plaintiff alleges that all of the factors that the *Boys Market* Court mentioned are present in the instant case, as there is a collective bargaining agreement in place, which contains a mandatory arbitration and grievance process; the defendants have breached the no-strike provision of the collective bargaining agreement; the work stoppage is over a grievance which both parties are bound to arbitrate; and ordinary principles of equity warrant an injunction**.**  The final factor is a point of contention between the parties—whether equity warrants injunctive relief.

### A.  Do Equitable Principles Warrant Injunctive Relief?

In *Boys Market*, the Supreme Court directed district courts to consider whether equitable principles warranted injunctive relief as one of the four factors to consider when determining whether to grant an injunction in a labor dispute.  When assessing whether equity dictates that injunctive relief be granted, the Court should analyze "whether breaches are occurring and will continue, or have been threatened and will be committed; whether they have caused or will cause irreparable injury to the employer; and whether the employer will suffer more from the denial of an injunction than will the union from its issuance."  398 U.S.at 254.  In the traditional preliminary injunction analysis, the Court must also determine whether the Plaintiff has demonstrated a strong likelihood of success on the merits.  The Court in *Drivers, Chauffeurs, Warehousemen and Helpers Teamsters Local Union No. 71 v. Akers Motor Lines, Inc.*, 582 F.2d 1336, 1342 (4th Cir. 1978) held that to demonstrate a likelihood of success on the merits for a *Boys Market* injunction, "a plaintiff . . . need only establish that the position he will espouse in arbitration is sufficiently sound to prevent the arbitration from being a futile endeavor.  If there is a genuine dispute with respect to an arbitrable issue, the barrier (to the issuance of an injunction)

we believe appropriately has been cleared. . . . ."[2] Finally, Defendants do not argue the issue of whether injunctive relief is in the public interest.  In any event, it appears as though the public interest warrants granting injunctive relief in this case because Defendant's act of refusing to carry their Nextel devices endangers the safety of the passengers on their vehicles, as Plaintiffs indicated that several passengers utilize MV Transportation's services to be transported to critical medical appointments.

It appears as though the major dispute in this case is whether Defendants' breaches constitute irreparable injury to MV and whether the employer will suffer more from the denial of an injunction than will the union from its issuance.  Plaintiff alleges that if Defendants are not enjoined from their practice of turning off their Nextel devices while driving, this will cause MV "substantial irreparable injury and damage including but not limited to, the loss of client's goodwill and other consequential financial loss."

Plaintiffs direct the Court to *Kone Inc. v. Local 4*, No. 05-10093, 2006 WL 2987042, at *9 (D. Mass. Sept. 27, 2006) for its holding that "irreparable harm may consist of economic harm, damage to reputation, loss of business and harm to goodwill, inadequate service of customers, and delay in performing or failure to perform contractual obligations."  In facts similar to the case at bar, in *Kone*, Defendant Local 4 was engaged in a labor strike, and Plaintiffs sought a preliminary injunction, asserting that *Boys Market* should guide the Court's analysis as to whether it should issue a preliminary injunction. Asserting an argument identical to the one that the Plaintiff in the case at bar asserts to show irreparable harm would result if an injunction was not issued, the Court in *Kone* recognized the Plaintiff's argument that "it had suffered irreparable harm in the form of damaged customer relationships and goodwill." *Id.* at

---

[2] Contrary to Defendants' arguments during the hearing in this matter, in a *Boys Market* injunction, when assessing the likelihood of success on the merits of the case, the Court simply must determine whether the Plaintiff can assert a position in arbitration that would not make the arbitration futile, as the *Kone* court articulated.

\*10. Furthermore, the Court noted that the plaintiff "point[ed] to the negative feedback that it received from its building management clients at the United States Courthouse, the Saltonstall Building, and Logan Airport when service at those locations was delayed [because of the labor strike]. It also claims that public safety was threatened when the Mechanics were unavailable to perform emergency work. . . ." The Court found that "in sum, the balance of harms tip[ped] in Kone's favor. Kone has proven that its reputation and ability to provide customer service has been negatively impacted and will continue to suffer if the strike continues. The only harm that Local 4 claims is the possibility that Kone will not submit to arbitration." *Id.* at \*11.

Defendants respond to the Plaintiff's Motion by alleging that none of the pleadings filed by Plaintiff demonstrate irreparable harm. Moreover, Plaintiff argues that the relief sought by Plaintiff is contrary to the District of Columbia and Maryland law—namely, the use of cellular phones and similar devices while operating a vehicle is prohibited in these states. Defendants argue that "the Union's advice to its members to accept the devices but to use them to receive or send messages only when they arrive at a stopping place is consonant with the law." (Doc. No. 3, at 2). Additionally, Defendants allege that "the use of the device endangers the passenger, the driver, other motorists and pedestrians alike. While treatment and therapy may be delayed for a person who does not get their Metro Access ride on time, the harm done by a dangerous driver far outweighs such inconvenience, even discomfort." *Id.* In the hearing on this matter, Defendants argued that responding to calls on the Nextel device required pulling over during trips, causing significant delays in arriving at the driver's desired destination. Moreover, Defendants claimed that this practice caused safety risks for drivers and passengers.

It appears as though equitable principles warrant injunctive relief in favor of the Plaintiff. As mentioned above, a breach of the collective bargaining agreement has been threatened. Moreover, based on the conclusion in *Kone*, this breach does appear as though it will cause

irreparable harm to the employer if injunctive relief is not issued pending arbitration. The delays alone caused by the failure to carry the device will likely hurt the reputation of the Plaintiff, as the efficient transit of the plaintiff's clients will be frustrated if MV is unable to communicate essential information to its drivers. Finally, it appears as though the employer will suffer more from the denial of the injunction than will the union from its issuance. Plaintiff contends that MV "does not require drivers to use the Nextel devices while operating a vehicle. To the contrary, both MV policy and WMATA policy prohibit the use of electronic devices of any sort while operating a vehicle under the service contract with WMATA." (Doc. No. 2-1, at 10. From the assertions made during the hearing and in the pleadings, it seems as though Plaintiff's policy does not require Defendants to use their mobile devices while driving, only carry them, and listen for information coming from dispatch. When a response to dispatch is required from the drivers, the act of pulling over to respond does not harm Defendants so much as to tip the balance of the harms in the Defendants' favor.

The fact that several passengers are developmentally and mentally disabled and rely on MV's services to arrive at critical medical appointments, among other places, presents strong safety reasons for why Defendants should be required to act in accordance with the MV policy for properly utilizing their Nextel devices. In the event that a call from dispatch necessitates a driver pulling over to respond to the call, such an inconvenience does not cause irreparable harm to Defendants. On the other hand, the loss of client goodwill and other inconveniences which will affect Plaintiff clearly demonstrates the irreparable harm that will result to Plaintiff if the injunction is not granted.

Accordingly, the balance of the harms clearly tips in Plaintiff's favor, as the facts of this case strongly suggest that very little hardship results to Defendant by carrying their Nextel devices in their vehicles and only using them between stops as the MV policy dictates. Finally,

there is a strong likelihood of success on the merits, under the analysis of *Drivers*. The arbitration agreement at issue obligates the parties to arbitrate any "dispute between the parties concerning the meaning, interpretation, application or alleged violation by the Company of the express terms of [the Labor] Agreement." (Doc. No. 2-1, at 8). Therefore, it is apparent from the pleadings in this case that the position that plaintiff will espouse in arbitration is sufficiently sound to prevent the arbitration from being futile, consistent with the standard articulated in *Kone*. In light of the foregoing discussion, the Court will **GRANT** Plaintiff's Motion for TRO, enjoining Defendants from refusing to carry and properly use the Nextel radios and requiring the parties to dispute their grievance pursuant to the arbitration provisions in the Labor Agreement.

### III. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Temporary Restraining Order is **GRANTED**. As noted during the hearing on this matter, Plaintiff has demonstrated a sufficient basis for an injunction, and the Court will issue an injunction in this case upon the receipt of Plaintiff's revised proposed Order outlining the injunctive relief sought. As discussed in the hearing on this case, the Court will not require posting of a bond in this matter. A separate Order will follow.

Date: <u>June 13, 2011</u>               _____/s/_____
                             Alexander Williams, Jr.
                             United States District Judge